**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| THE OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., and | ) ) ) | |
| | ) | |
| CHUTKA TRUCKING LLC, and | ) | |
| | ) | |
| MARK ELROD D/B/A M R ELROD, and | ) | Civil Action No. 1:19-cv-86 |
| | ) | |
| B.L. REEVER TRANSPORT, INC., | ) | CLASS ACTION COMPLAINT FOR |
| | ) | DECLARATORY AND INJUNCTIVE RELIEF |
| Plaintiffs, | ) | AND DAMAGES |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC HOLCOMB, individually and in his capacity as Governor of the State of Indiana, and | ) ) ) | |
| | ) | |
| JOE MCGUINNESS, individually and in his capacity as Commissioner of the Indiana Department of Transportation, and | ) ) ) | |
| | ) | |
| THE INDIANA FINANCE AUTHORITY, and | ) ) | |
| | ) | |
| DAN HUGE, individually and in his capacity as Indiana Public Finance Director, and | ) ) ) | |
| | ) | |
| MICAH G. VINCENT, individually and in his capacity as a member of the Indiana Finance Authority, and | ) ) ) | |
| | ) | |
| KELLY MITCHELL, individually and in her capacity as a member of the Indiana Finance Authority, and | ) ) ) | |
| | ) | |
| OWEN B. MELTON, JR., individually and in his capacity as a member of the Indiana Finance Authority, and | ) ) ) | |

|  | ) |
| --- | --- |
| HARRY F. MCNAUGHT, JR., individually | ) |
| and in his capacity as a member of the | ) |
| Indiana Finance Authority, and | ) |
|  | ) |
| RUDY YAKYM III, individually and in his | ) |
| capacity as a member of the Indiana Finance | ) |
| Authority, and | ) |
|  | ) |
| and | ) |
|  | ) |
| ITR CONCESSION COMPANY LLC, | ) |
|  | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

## I.   NATURE OF THE CASE

1.      Plaintiffs bring this action to challenge the constitutionality of a system of tolls imposed by the ITR Concession Company LLC (ITRCC), under the direction of the Governor, the Commissioner of the Indiana Department of Transportation (INDOT) and the Indiana Finance Authority (IFA), on certain commercial motor vehicles (CMVs) traveling on the Indiana East West Toll Road (Toll Road).

2.      Tolls are defined under the Indiana Administrative Code as "the fees collected by [a] concessionaire for the use of [a] toll road." 135 IAC 2.5-1-1 Sec. 1(q). This includes "all revenues charged by or on behalf of the concessionaire in respect of vehicles using the toll road during the term of any public-private agreement entered into in accordance with IC 8-15.5-4 [concerning contracting toll road operations to non-state entity]." *Id.*

3.      Tolls are considered "user fees" under Indiana law. I.C. § 8-15.2-2-10.

4.      ITRCC, acting under color of state law, pursuant to the First Amendment to the Amended and Restated Indiana Toll Road Concession and Lease Agreement between IFA and ITRCC dated

September 21, 2018 (Amended Lease), and with the approval and cooperation of the other Defendants, is unlawfully imposing discriminatory and/or excessive tolls on CMVs Class 3 and higher in violation of the Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution.

5.     A true and correct copy of the Amended and Restated Indiana Toll Road Concession and Lease Agreement dated July 1, 2017 is attached hereto as Exhibit 1.  A true and correct copy of the First Amendment to the Amended and Restated Indiana Toll Road Concession and Lease Agreement between IFA and ITRCC dated September 21, 2018 is attached hereto as Exhibit 2.

6.     Plaintiffs challenge the constitutionality of the imposition of discriminatory and excessive tolls on named Plaintiffs and on the members of the putative class of motor carriers and truck drivers operating on the Toll Road who paid the discriminatory and/or excessive tolls at issue here.

7.     Plaintiffs seek a declaratory judgment against all Defendants in their official capacities that the toll system imposed by Defendants on Class 3 and higher CMVs violates the Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution.  Plaintiffs also seek prospective injunctive relief against all Defendants in their official capacities enjoining the ongoing implementation of that system.

8.     Plaintiffs further seek monetary damages against IFA and its members in their official capacities, ITRCC, and the other named Defendants in their individual capacities in the amount of the discriminatory and/or excessive tolls collected from individually named Plaintiffs and the members of the class they seek to represent.

## II.     <u>JURISDICTION AND VENUE</u>

9.     This case arises under Article I, Section 8, Clause 3 of the United States Constitution (the Commerce Clause), Article IV, Section 2, Clause 1 (the Privileges and Immunities Clause), the Due Process and Privileges and Immunities Clauses of the Fourteenth Amendment, and 42 U.S.C.

§§ 1983 and 1988.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), because most of the Defendants (in their official capacities) reside in Marion County, Indiana.

## III.   PARTIES

### A.   Plaintiffs

11.    Plaintiff, the Owner-Operator Independent Drivers Association, Inc. (OOIDA), is a not-for-profit corporation incorporated in the State of Missouri, with its headquarters located at 1 N.W. OOIDA Drive, P.O. Box 1000, Grain Valley, Missouri 64029.  OOIDA was founded in 1973 and has approximately 160,000 members residing in all fifty states.  OOIDA's members include owner-operators who own and operate their own trucking businesses, either leasing their CMVs and services to motor carriers that haul freight under their own state or federal operating authority or hauling freight under the owner-operator's own state or federal operating authority.

12.    Typically, OOIDA members are CMV operators (truck drivers) or small business trucking companies.  OOIDA's membership includes individuals and small businesses who conduct at least a portion of their business in Indiana and who operate their CMVs over the Toll Road.  These individuals and companies are required to pay and have paid tolls imposed upon their use of the Toll Road by ITRCC.

13.    OOIDA is acting herein in a representative capacity seeking, among other things, declaratory and injunctive relief on behalf of its members, including several of the named Plaintiffs and similarly situated CMV drivers and motor carriers who operate from time-to-time within the State of Indiana, and who pay tolls imposed by ITRCC for their use of the Toll Road.  The interests OOIDA seeks to protect are germane to the purposes for which it exists.

14.     Plaintiff Chutka Trucking LLC (Chutka) is a limited liability company organized under the laws of the state of Utah, with a principal place of business located at 578 E. 200 South, Clearfield, UT 84015. Chutka is a small business motor carrier registered with and authorized by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration to haul property in interstate commerce under U.S. D.O.T. number 877459.  Chutka's CMVs routinely transport property in interstate commerce traveling through Indiana using the Toll Road.  Chutka has paid tolls on the Toll Road in the past several years, including excessive and/or discriminatory tolls which are the subject of this action. Karen C. Chutka and Brian P. Chutka are the owners of Chutka Trucking LLC and are members of OOIDA.

15.     Plaintiff Mark Elrod d/b/a M R Elrod is an individual with a principal place of business located at 3037 N. 550 E, Peru, Indiana 46970.  Mr. Elrod routinely transports firewood using his CMV in interstate commerce.  The Toll Road is one of the routes available for use by Mr. Elrod, and he anticipates hauling freight over the Toll Road in the future.  Mr. Elrod is a member of OOIDA.

16.     Plaintiff B.L. Reever Transport, Inc. (Reever) is incorporated under the laws of the state of Ohio, with a principal place of business located at 1504 Reynolds Road, Maumee, OH 43537. Reever is a small business motor carrier registered with and authorized by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration, to haul property in interstate commerce under U.S. D.O.T. number 221269.  Reever's CMVs routinely transport property in interstate commerce traveling through Indiana and using the Toll Road.  Reever has paid tolls on the Toll Road including excessive and/or discriminatory tolls which are the subject of this action. Monte Wiederhold is the owner of B.L. Reever Transport, Inc., and he is a member of OOIDA.

**B.**     **Defendants**

The Indiana Finance Authority and Members

17.     Defendant Indiana Finance Authority (IFA) is a public body politic and corporate of the State of Indiana and is the owner and lessor of the Toll Road.  IFA's principal office is located at One North Capitol Ave., Suite 900, Indianapolis, IN 46204.

18.     IFA enjoys financial autonomy from the State of Indiana.

19.     IFA can incur debt in its own name.

20.     IFA's debt is not a liability of the State of Indiana and is not backed by the State treasury.

21.     IFA can raise funds independent of any State appropriations.

22.     Indiana law considers IFA to be independent from the State of Indiana in its corporate and sovereign capacity. I.C. § 5-1.2-3-1.

23.     IFA can sue and be sued in its own name.

24.     IFA can acquire, own, and sell property.

25.     IFA can enter into contracts and hire employees.

26.     IFA is not immune from suits for damages in federal court under the Eleventh Amendment to the United States Constitution.

27.     IFA operates under the direction of the Public Finance Director for the State of Indiana. Pursuant to statute, there are five members of the Indiana Finance Authority: the Director of the State Budget Agency (called the "Office of Management and Budget"), the Treasurer of the State, and three additional members appointed by the Governor.

28.     Defendant Dan Huge is the Public Finance Director for the State of Indiana and manages the Indiana Finance Authority.  In his capacity as Public Finance Director, Mr. Huge's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant

Huge is sued in his official capacity as Public Finance Director for declaratory and injunctive relief, and in his individual capacity for damages.

29.     Defendant Micah G. Vincent is the Chair of the Indiana Finance Authority and the Director of the Office of Management and Budget.  In his capacity as a member of the Indiana Finance Authority, Mr. Vincent's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant Vincent is sued in his official capacity as Chair of the Indiana Finance Authority for declaratory and injunctive relief and for damages, and in his individual capacity for damages.

30.     Defendant Vincent is also a member of the Indiana Toll Road Oversight Board (ITROB).

31.     ITROB was established by Executive Order of the Governor to oversee all aspects of the Amended Lease of the Toll Road, including tolling. E.O. 06-10 (June 6, 2010); E.O. 17-03 (Feb. 1, 2017).

32.     Defendant Kelly Mitchell, the State Treasurer, is statutorily required to serve as a member of the Indiana Finance Authority. In her capacity as a member of the Indiana Finance Authority, Ms. Mitchell's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant Mitchell is sued in her official capacity as a member of the Indiana Finance Authority for declaratory and injunctive relief and for damages, and in her individual capacity for damages.

33.     Defendant Owen B. (Bud) Melton, Jr. is a member of the Indiana Finance Authority.   In his capacity as a member of the Indiana Finance Authority, Mr. Melton's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant Melton is sued in his official capacity as a Member of the Indiana Finance Authority for declaratory and injunctive relief and for damages, and in his individual capacity for damages.

34.     Defendant Harry F. (Mac) McNaught, Jr. is a member of the Indiana Finance Authority. In his capacity as a member of the Indiana Finance Authority, Mr. McNaught's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant McNaught is sued in his official capacity as a Member of the Indiana Finance Authority for declaratory and injunctive relief and for damages, and in his individual capacity for damages.

35.     Defendant Rudy Yakym, III is a member of the Indiana Finance Authority. In his capacity as a member of the Indiana Finance Authority, Mr. Yakym's principal place of business is located at One North Capitol, Suite 900, Indianapolis, IN 46204.  Defendant Yakym is sued in his official capacity as a member of the Indiana Finance Authority for declaratory and injunctive relief and for damages, and in his individual capacity for damages.

36.     IFA and Defendants Huge, Vincent, Mitchell, Melton, McNaught, and Yakym are referred to collectively as IFA Defendants.

Governor Holcomb

37.     Defendant Eric Holcomb is the sitting governor of the State of Indiana. The Governor's principal office is located at 200 West Washington Street, Rm. 206, Indianapolis, IN  46204.

38.     Article 5, Section 1 of the Indiana constitution vests the executive power of the State in the Governor. Article 5, Section 16 directs that the Governor "shall take care that the laws are faithfully executed."

39.     Governor Holcomb participated directly in the planning and execution of the tolling scheme at issue in this case.

40.     Governor Holcomb worked with IFA and ITRCC to amend the Lease Agreement and to facilitate ITRCC's imposition of unconstitutionally excessive and/or discriminatory tolls on certain CMVs.

41.     A public-private agreement entered into under Article 15-5 of the Indiana Code must be approved by the Governor before its execution. I.C. § 8-15.5-5-1.

42.     On information and belief, Governor Holcomb approved the terms of the Amended Lease prior to its execution as required by statute.

43.     Governor Holcomb is sued in his official capacity as Governor of the State of Indiana for declaratory and injunctive relief, and in his individual capacity for damages.

Commissioner - Indiana Department of Transportation

44.     Defendant Joe McGuinness is Commissioner of the Indiana Department of Transportation (INDOT).  Commissioner McGuiness was appointed in January 2017 by Governor Eric Holcomb. His principal office is located at 100 North Senate Avenue, Indianapolis, IN 46204. Commissioner McGuinness is sued in his official capacity as Commissioner of INDOT for declaratory and injunctive relief, and in his individual capacity for damages.

45.     Defendant McGuinness is also a member of ITROB.

46.     Defendants Governor Holcomb and Commissioner Joe McGuiness are referred to herein collectively as State Defendants.

47.     Each individually named Defendant is legally obliged to execute his/her responsibilities in a manner consistent with obligations imposed by the United States Constitution upon states or upon individuals acting under the color of state law.

ITR Concession Company LLC

48.     Defendant the ITR Concession Company LLC (ITRCC) is a Delaware limited liability company.

49.     ITRCC is the Lessee and Concessionaire of the Indiana Toll Road pursuant to the Amended Lease and its predecessor agreements.

50.     ITRCC's principal place of business is located at 52551 Ash Road, Granger, IN 46530.

51.     In operating the Toll Road, ITRCC is engaging in a public function that is traditionally the exclusive prerogative of the state.

52.     The Indiana Finance Authority shares oversight responsibility with INDOT and ITROB to assure that ITRCC operates and maintains the Toll Road in accordance with the terms of the lease.

53.     ITRCC is not an arm of the State of Indiana and does not enjoy immunity from suits for damages in federal court under the Eleventh Amendment to the United States Constitution.

54.     ITRCC has acted under the direction of and with the significant encouragement of State Defendants and IFA Defendants in increasing the tolls at issue in this action.

55.     ITRCC, in operating the Toll Road and increasing the tolls on truckers, is performing a traditional public function, in which it is in a symbiotic relationship with the state.

56.     Together, acting under color of state law, ITRCC, IFA Defendants, and State Defendants are imposing excessive and discriminatory tolls upon Plaintiffs in violation of the United States Constitution.

57.     Because ITRCC is performing an essential public and government function and acting in joint participation with State Defendants, it is a state actor within the meaning of the United States Constitution and 42 U.S.C. § 1983.

58.     ITRCC is sued for declaratory and injunctive relief and for damages.

IV.     **ALLEGATIONS RELATED TO ALL CLAIMS**

        Background of the Indiana Toll Road Lease

59.     The Indiana East West Toll Road (Toll Road) serves as a critical transportation link between major East Coast cities, northern Indiana, the City of Chicago, and the western United States.

60.     The Toll Road spans approximately 157 miles between the Ohio Turnpike and the Chicago Skyway.

61.    The Toll Road was originally constructed in the 1950s by the Indiana Toll Road Commission, which is a predecessor of one of several statutory entities that were consolidated to form IFA in 2005.

62.    Since that time, IFA has been the owner of the Toll Road.

63.    In 2005, faced with a multi-billion dollar gap between statewide transportation project needs and projected revenues, along with the significant financial cost to operate and maintain the Toll Road, former Indiana governor Mitch Daniels launched the Major Moves Initiative.

64.    The Major Moves Initiative was a 10 year transportation plan designed to significantly improve and expand Indiana's highway infrastructure.

65.    In 2005, IFA began to explore the idea of leasing the Toll Road to a private entity. IFA solicited bids from potential lessees through an auction process. Authorization for such a leasing transaction was included under House Enrolled Act 1008, popularly known as "Major Moves," in late March 2006.

66.    ITRCC's bid was accepted by IFA.

67.    On April 12, 2006, ITRCC and IFA executed a contract entitled the "Indiana Toll Road Concession and Lease Agreement."

68.    Pursuant to its terms, IFA agreed to terminate the existing lease to INDOT and to lease the toll road lands and facilities to ITRCC for a term of 75 years, ending in 2081.

69.    ITRCC agreed to pay rent for the Toll Road in the amount of $3.8 billion to be paid in full on the date of closing in 2006.

70.    Major Moves was funded with $2.6 billion in revenue obtained from the lease of the Toll Road.

71.    The state also repaid $200 million in outstanding Toll Road debt, resulting in there being no indebtedness related to the Toll Road for the first time in its half-century existence.

72.    ITRCC formally assumed operation of the Toll Road on June 29, 2006.

73.    Pursuant to the 2006 Lease Agreement, ITRCC, as an operator within the meaning of I.C. § 8-15.5-2-5, has the authority to establish and collect tolls on the Toll Road subject to limitations established by IFA.

74.    In 2014, ITRCC filed for bankruptcy. ITRCC claimed in its bankruptcy proceeding that it had "established appropriate toll levels to satisfy operational and maintenance costs over the 74 year term" of its lease. *Disclosure Statement* (Doc. 25) at 9, *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Sept. 22, 2014).

75.    Defendant ITRCC emerged from bankruptcy and remained as operator, lessee, and concessionaire of the Toll Road.

76.    IFA defines vehicle classifications "[f]or purposes of the toll" on the Toll Road in the Indiana Administrative Code.  135 IAC 2-5-1.  The vehicle classifications correlate to the number of axles on the vehicle, such that, for example, a Class 3 vehicle has three axles.  *Id.*  IFA considers "any vehicle other than a Class 2 vehicle" to be a "[h]eavy vehicle." 135 IAC 2.5-1-1.

77.    IFA's authority to fix, authorize or establish tolls under a public-private agreement is established under I.C. art. 8-15.5.  *See* I.C. § 8-15-2-14.5(b).

78.    I.C. § 8-15.5-7-1(a) authorizes IFA to fix and revise the amount of user fees (including tolls) that an operator like ITRCC may charge and collect for use of any part of a toll road project under a public-private agreement. IFA may establish a maximum amount for such user fees. I.C. § 8-15.5-7-1(b)(1).

79.     User fees established by IFA under Indiana Code Article 15-5.5 are not subject to supervision or regulation by any other agency of the state.  I.C. § 8-15.5-7-3.

80.     A public-private agreement may authorize an operator like ITRCC to adjust the user fees charged and collected for use of the toll road project so long as such fees do not exceed the maximum amount established by IFA. I.C. § 8-15.5-7-5(2).

81.     For decades, the U.S. Supreme Court has held that Article 1, Section 8, Clause 3 of the United States Constitution (the Commerce Clause) imposes limitations upon the authority of states to undertake measures that create an undue burden upon, or that discriminate against, interstate commerce. This legal principle is referred to as the "dormant Commerce Clause."

82.     I.C. art. 8-15.5 contains no specific references to limitations imposed upon states by the dormant Commerce Clause of the United States Constitution with respect to the imposition of excessive or discriminatory tolls.

83.     In establishing a system of toll rates for the Toll Road under the Amended Lease, Defendants, and each of them, have failed to take into account limitations imposed upon the imposition of user fees like tolls under the Commerce Clause of the United States Constitution.

84.     I.C. art. 8-15.5 contains no authorization with respect to the disposition or use of toll receipts collected in excess of the reasonable cost of providing services to users of the Toll Road or in excess of the value of the benefit received by users of the Toll Road in exchange for the tolls paid.

85.     The Amended Lease contains no provisions that address the dormant Commerce Clause's limitations on the imposition of user fees (tolls).

86.     The public record available to the Plaintiffs contains no evidence that Defendant McGuiness in his capacity as Commissioner of INDOT and member of ITROB has provided any

advice, counsel or reports to the Governor or to IFA with respect to limitations under the United States Constitution on the amount or structure of tolls that may be imposed upon users of the Toll Road under the Amended Lease.

87.     The public record available to the Plaintiffs contains no evidence that Defendant Vincent, in his capacity as Chair of the Indiana Finance Authority and member of ITROB, has provided any advice, counsel or reports to the Governor or to IFA with respect to limitations under the United States Constitution on the amount or structure of tolls that may be imposed upon users of the Toll Road under the Amended Lease.

<u>Next Level Connections Program</u>

88.     On September 4, 2018, Governor Eric Holcomb announced his infrastructure agenda plan for 2019.

89.     Defendant Holcomb's plan provided for a $1 billion expenditure for infrastructure projects known as the "Next Level Connections Program."

90.     The program is being funded by $1 billion in payments agreed to by Defendant ITRCC, and with the concurrence and approval of Defendants IFA and/or its members and Governor Holcomb.

91.     Under the program announced by Governor Holcomb, and in consideration for the $1 billion in payments, IFA amended its lease with ITRCC to allow ITRCC to increase the toll rates for Class 3 and higher vehicles by 35 percent, beginning October 5, 2018.

92.     The Amended Lease between IFA and ITRCC, authorizing the toll increase on Class 3 and higher CMVs, was executed on September 21, 2018.

93.     The increased heavy-vehicles-only tolls went into effect on October 5, 2018.

94.     The toll increase authorized under the Amended Lease is imposed *only* on Class 3 and higher vehicles. Class 3 and higher vehicles are largely heavy CMVs operating in interstate

commerce. The new tolls imposed by ITRCC under the Amended Lease for a complete trip on the

Toll Road are set forth in the following table:

| VEHICLE CLASS | FORMER TOLL | NEW TOLL | INCREASE |
|---|---|---|---|
| Class 3 | $16.33 | $22.04 | 35% |
| Class 4 | $34.04 | $45.96 | 35% |
| Class 5 | $44.46 | $60.02 | 35% |
| Class 6 | $52.11 | $70.35 | 35% |
| Class 7 | $96.90 | $130.80 | 35% |

95.     Governor Holcomb's September 4, 2018, announcement disclosed that the Next Level

Connections Program would utilize $1 billion paid as consideration for ITRCC's right to extract

increased tolls from motor carriers and commercial motor vehicle operators (truck drivers) to fund

a variety of projects throughout the State including:

1)  $100 million to "bridge the digital divide in rural areas of the state" through grants "to bring high speed, affordable broadband access to unserved and underserved areas of the state";

2)  $90 million to "link communities through more hiking, biking and riding trails" through grants "encourage[ing] local and regional collaboration to grow the state's trails system";

3)  $600 million to accelerate completion of I-69 Section 6 from 2027 to 2024;

4)  $190 million to add new interchanges on U.S. 31 between South Bend and Indianapolis, and expand the number of projects that will be completed on U.S. 20 and 30 through 2023;

5)  $20 million to "[e]stablish Indianapolis as the preferred Midwestern destination by adding more nonstop international flights."

Rachel Hoffmeyer, *Gov. Holcomb outlines Next Level Connections program*, IN.gov, Sept. 4,

2018, https://calendar.in.gov/site/gov/event/gov-holcomb-outlines-next-level-connections-

program/.

96.     The $1 billion announced by Governor Holcomb on September 4, 2018 for inclusion in his Next Level Construction Program was earmarked in its entirety for projects not functionally related to the Toll Road.

97.     According to the Amended Lease, the first installment of $400 million was paid by ITRCC to IFA on or before October 5, 2018.  Amended Lease, § 7(a).

98.     According to the Amended Lease, a second payment of $300 million to IFA is due no later than October 1, 2019.  Amended Lease, § 7(b).

99.     According to the Amended Lease, a third payment of $300 million from ITRCC to IFA is due no later than October 1, 2020.  Amended Lease, § 7(c).

100.    None of the intended expenditures of any portion of the $1 billion is intended to contribute to the maintenance, operation, or improvement of the Toll Road.

101.    The projects included by Governor Holcomb in the Next Level Connections Programs have no functional relationship to the Toll Road.

102.    The Next Level Connections Program provides no benefit to the users of the Toll Road in their capacity as users of the Toll Road.

103.    Prior to raising the tolls applicable to heavy vehicles on October 5, 2018, toll receipts from CMVs had been at least sufficient to cover Class 3 and higher CMVs' fair share of the cost of operating and maintaining the Toll Road.

104.    After the 35 percent toll increase went into effect, toll receipts from Class 3 and higher CMVs represented at least 135 percent of what previously has been determined as those vehicles' fair share of the actual cost of operating and maintaining the turnpike.

105.    That excess does not represent a fair approximation of the use of the facilities by CMVs for which the tolls were imposed.

106.    That excess does not represent a fair approximation of benefits received by the motor carriers and drivers for their use of the Toll Road.

107.    The benefits of the Next Level Connections Program accrue instead to those in rural Indiana who will benefit from high speed broadband access; to hikers; cyclists, and horse-riding enthusiasts who will benefit from upgraded trails; users of other Indiana highways; air travelers to Indiana and those who serve them; and users of a new port on the Ohio River.

108.    The existing funding scheme for the Next Level Connections Program requires truckers engaged in interstate commerce to bear costs above and beyond the costs associated with their use of the Toll Road.

109.    Plaintiffs do not attack the wisdom of the programs supported by the Next Level Connections Program.  If those programs have value, however, they should be paid for by Indiana taxpayers.  Funding these projects with toll receipts violates constitutional protections guaranteed to users of the Toll Road.

110.    Defendants' actions support a finding that their decision to raise tolls on selected CMVs by 35 percent and to expend revenues generated by that increase satisfies prevailing standards for establishing an undue burden on commerce under the Commerce Clause.

111.    IFA Defendants and State Defendants have not disclosed the extent to which revenues generated by the tolls imposed upon Class 3 and higher CMVs will be used to maintain and operate the Toll Road.

112.    IFA Defendants have no authority to authorize their contracting partner, ITRCC, to collect or retain toll receipts in excess of what is permitted under the dormant Commerce Clause.

113.    The tolling scheme designed by ITRCC, the Governor, and the Indiana Finance Authority and its manager and members to subsidize the Next Level Connections Program discriminates against interstate commerce.

114.    IFA Defendants and State Defendants may not evade their obligations under the United States Constitution by contracting with a private entity to operate the Toll Road.

115.    ITRCC is subject to the requirements of the United States Constitution because it is acting under color of state law.

116.    In 2017, INDOT disclosed that 50 percent of heavy truck traffic on its roads and bridges begins and ends out of state.

117.    Upwards of 90 percent of heavy truck traffic in Indiana operates interstate, either originating or terminating out of state or both originating and terminating out of state.

118.    When Governor Holcomb announced the new toll increase on CMVs traveling in interstate commerce he specifically noted: "The majority of traffic is from out-of-state. We're capturing other people's money."  Dan Carden, *State to receive $1 billion in exchange for allowing higher truck tolls on Indiana Toll Road*, Nw. Ind. Times, Sept. 4, 2018, https://www.nwitimes.com/news/local/govt-and-politics/state-to-receive-billion-in-exchange-for-allowing-higher-truck/article_640a7253-34cb-5bfe-a7fd-5b653ba4ef86.html.

119.    The Next Level Connections Program shifts the burden for much of the State's infrastructure costs from the citizens of Indiana to operators of interstate CMVs that use the Toll Road.

120.    Thus, the new tolling scheme discriminates against interstate commerce.

121.    Defendants' actions in implementing the Next Level Connections Program constitute an impermissible act of discrimination that violates the Plaintiffs' constitutional rights under the Privileges and Immunities Clauses of the United States Constitution.

122.    The artificial inflation of the tolls for trucks to use the Toll Road has and will continue to have significant and adverse effects on interstate commerce.

123.    Defendant Eric Holcomb authorized, ratified or acquiesced in the institution of the excessive and/or discriminatory tolls imposed upon Class 3 and higher CMVs on or about October 5, 2018.

124.    Defendant Joe McGuinness authorized, ratified or acquiesced in the institution of the excessive and/or discriminatory tolls imposed upon Class 3 and higher CMVs on or about October 5, 2018.

**V.    ALLEGATIONS RELATED TO DECLARATORY RELIEF**

125.    An actual controversy exists between the parties to this proceeding with respect to whether, as the Plaintiffs contend, the tolls imposed on Class 3 and higher CMVs starting on October 5, 2018 are excessive and are authorized in consideration for payments to support projects functionally unrelated to the Toll Road thus constituting an undue burden on interstate commerce. By contrast, in order to support the constitutionality of these tolls, each of the Defendants must contend that such tolls are reasonable and imposed only to support the Toll Road, including services and facilities that have a functional relationship with the Toll Road.

126.    An actual controversy exists between the parties to this proceeding with respect to whether, as the Plaintiffs contend, the 35 percent increase in toll rates covering Class 3 and higher CMVs was designed to impose a heavier burden on large CMVs most likely to be operated by motor carriers and drivers hauling freight in interstate commerce thus constituting a discrimination against interstate commerce.  By contrast, in order to support the constitutionality of these tolls,

Defendants must contend that the Court should ignore Governor Holcomb's representation that the burden of financing the Next Level Connections Program would fall by design most heavily on out-of-state traffic.

127.    For reasons set forth above, Plaintiffs seek a declaratory judgment that the increased tolls on Class 3 and higher CMVs are unconstitutional under the Commerce Clause.

128.    Plaintiffs have a direct, substantial, and immediate interest in the resolution of the questions of (1) whether the increased tolls imposed on Class 3 and higher CMVs constitute an undue burden on interstate commerce, and (2) whether the increased tolls imposed on Class 3 and higher CMVs discriminate against interstate commerce in violation of the Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution.

129.    A declaratory judgment by this Court will resolve an actual dispute between the parties with respect to the constitutionality of the tolls imposed by Defendants on motor carriers and drivers using the Toll Road.

**VI.     ALLEGATIONS RELATED TO INJUNCTIVE RELIEF**

130.    Defendants, acting under color of state law, have imposed and are imposing unconstitutionally excessive tolls on the use of the Toll Road by CMVs.

131.    Under the Amended Lease, ITRCC has or will transfer to the State of Indiana $1 billion in consideration for ITRCC's right to collect excess toll receipts to subsidize services and facilities that have no functional relationship to the Toll Road.

132.    These actions by Defendants impose an undue burden on interstate commerce and discriminate against motor carriers and drivers of CMVs. A disproportionately high number of CMVs subject to the tolls operate in interstate commerce. Operators of passenger vehicles and small trucks which operate intrastate are not subject to the toll increase.

133.    Defendants have acknowledged that the increased tolls will fall most heavily on trucking traffic originating from or terminating outside the state of Indiana.

134.    Defendants' unconstitutional invasion of Plaintiffs' rights is ongoing and is causing, and will continue to cause, irreparable harm to Plaintiffs using the Toll Road.

135.    The balance of interests between the parties tilts heavily in favor of Plaintiffs and other persons who are currently required to pay tolls that generate revenue far in excess of the amount required to operate and maintain the Toll Road.

136.    The public interest will be well-served by eliminating the undue burden and discrimination that Defendants are imposing on users of the Toll Road.

## VII.    CLASS ACTION ALLEGATIONS

137.    Named Plaintiffs seek to represent a class comprising all persons or entities who, at any time on or since October 5, 2018, until the date when any final non-appealable judgment is entered, operated a commercial motor vehicle or vehicles in Vehicle Toll Class 3 or higher on the Toll Road and who paid tolls to ITRCC for that opportunity.

138.    This action, brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, meets the prerequisites for a class action under Fed. R. Civ. P. 23.

1)  **NUMEROSITY:** Pursuant to Fed. R. Civ. P. 23(a)(1), the Class is too numerous for practicable joinder. The members of the Plaintiff Class comprise tens of thousands of operators of CMVs on the Toll Road who have paid and/or will become liable to pay excessive and/or discriminatory tolls for their use of the Toll Road in the future.

2)  **TYPICALITY:** Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the representative parties who have paid or will pay the challenged toll are typical of the claims of all members of the Class. Named Plaintiffs and all class members are subject to ongoing harm by the same wrongful imposition of excessive and/or discriminatory tolls.

Plaintiffs' claims are the result of the same practices and course of conduct by Defendants that give rise to the claims of the class members, and Plaintiffs' claims are based on the same legal theories.

3) **ADEQUACY OF REPRESENTATION**: Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately assert and protect the interests of all members of the Class. Plaintiffs' attorneys are experienced class action litigators who will adequately represent the interests of the class. Plaintiffs' interest in obtaining compensatory damages and injunctive and declaratory relief for violations of their constitutional rights and privileges are consistent with, and do not conflict with, those of any potential class member. Plaintiffs have adequate financial resources to assure the interests of the Class will not be harmed.

4) **COMMONALITY:** Pursuant to Fed. R. Civ. P. 23(b)(3), common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Common questions of law and fact are susceptible to generalized, class-wide proof. Common questions of law and fact include, but are not limited to:

    i. whether the toll imposes an unconstitutional burden on interstate commerce for the CMVs paying the tolls;

    ii. whether the toll impermissibly discriminates against motor carriers and drivers paying the toll while engaged in interstate commerce;

    iii. whether the toll impermissibly discriminates against out-of-state motor carriers and drivers paying the tolls;

    iv.    whether the benefits secured through the expenditure of toll receipts are functionally related to use of the Toll Road;

    v.    what services should be included within the constitutional analysis of ITRCC's tolls on trucks;

    vi.    what are ITRCC's costs for maintaining the facilities associated with the Toll Road;

    vii.    what are ITRCC's costs for providing services;

    viii.    whether toll rates reflect a fair use of facilities by operators of CMVs paying the toll;

    ix.    the extent to which toll rates exceed the benefits ITRCC confers upon truckers paying the toll;

    x.    the extent to which tolls collected exceed the costs incurred by ITRCC to maintain the Toll Road; and

    xi.    whether the tolls collected are sufficiently related to services provided by ITRCC to those who pay the toll.

5) **UNIFORMITY OF ADJUDICATION:** Prosecution of separate actions would create the risk of inconsistent or varying adjudications, confronting Defendants with incompatible standards of conduct, and such separate actions would likely impede or be found dispositive of interests of non-parties to the adjudications.

6) **ASCERTAINABILITY:** Computerized records exist for all toll charges paid by individual class members who use the E-Z Pass or other electronic payment system or who use a credit card or debit card to make toll payments.  Further, ITRCC issues written receipts upon request at the time of payment for tolls paid with cash.  Toll

payments by business entities like motor carriers are business expenses for which claims for federal and state tax deductions are included on tax returns. Thus, there are numerous sources of documentation available to identify excessive tolls paid by putative class members.

7) **OTHER**: For potential class members, especially those who travel infrequently on the Toll Road, compensatory damages, in the form of past toll payments, may be relatively small, making it uneconomical for individual plaintiffs to adjudicate their individual claims. On information and belief, Defendants have collected and will continue to collect tolls from persons using the Toll Road, making injunctive and declaratory relief appropriate with respect to the whole class.

## <u>FIRST CAUSE OF ACTION</u>

### **(Violation of Commerce Clause - Undue Burden)**

139.    The allegations above are incorporated herein as if fully set forth below.

140.    The Commerce Clause of the United States Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States."  U.S. Const. art. I, § 8, cl. 3.

141.    The Commerce Clause prohibits state actions that unduly burden interstate commerce.

142.    The Commerce Clause requires that user fees, including tolls (1) must reflect a fair approximation of the toll payer's use of the tolled facilities; and (2) may not be excessive in relation to costs incurred by the tolling authority in providing such facilities.

143.    ITRCC's imposition of tolls, under the direction of IFA Defendants and State Defendants for use of the Toll Road by operators of CMVs constitutes an undue burden on interstate commerce in violation of the Commerce Clause because:

1) the tolls imposed upon Class 3 and higher commercial motor vehicles starting on October 5, 2018 do not reflect a fair approximation of the use of the Toll Road facilities by those CMVs upon whom the tolls are imposed;

2) the toll revenues collected by ITRCC starting on October 5, 2018 represent at least 135 percent of the actual cost of providing Toll Road services to operators of Class 3 and higher CMVs; such toll levels are excessive in comparison to the actual cost of making the services and facilities of the Toll Road available to CMV users; and

3) the $1 billion consideration promised by the ITRCC for the right under the Amended Lease to impose higher tolls is to be diverted by IFA Defendants and State Defendants to pay for services and facilities having no functional relationship to the operation and maintenance of the Toll Road.

144.    Plaintiffs and class members have suffered and continue to suffer damages as a result of Defendants' imposition of the unconstitutionally excessive tolls on their use of the Toll Road.

## SECOND CAUSE OF ACTION

### (Discrimination Against Interstate Commerce)

145.    The allegations above are incorporated herein as if fully set forth below.

146.    The Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution prohibit state actions that discriminate against interstate commerce.

147.    The substantial increase in tolls imposed by Defendants only upon Class 3 and higher commercial motor vehicles effective on October 5, 2018 discriminates against interstate commerce.

148.    The toll increase falls exclusively on the types of trucks that are most likely to be engaged in the interstate transport of cargo.  No increase in tolls on other vehicles including automobiles,

buses and small trucks that are relatively less likely to be engaged in interstate commerce was imposed.

149.    Defendants, acting under color of state law, have deprived and continue to deprive Plaintiffs and putative class members of the right to engage in interstate commerce absent discrimination and in violation of their rights under the Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution.

150.    Plaintiffs and class members have suffered and continue to suffer damages as a result of Defendants' imposition of the unconstitutional toll.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment against the Defendants as follows:

1.  A Declaratory Judgment against all Defendants that the current toll rates imposed by ITRCC on Class 3 and higher CMVs under the direction of IFA Defendants and State Defendants violate the Commerce Clause and constitute an undue burden upon interstate commerce because such toll rates do not represent a fair approximation of the use of the Toll Road by Class 3 and higher CMVs and because such toll rates generate revenue that exceeds the actual cost of operating and maintaining the Toll Road.

2.  A Declaratory Judgment against all Defendants that the 35 percent toll increase imposed on Class 3 and higher CMVs by Defendant ITRCC under the direction of IFA Defendants and State Defendants was designed to and does discriminate against interstate commerce in violation of the Commerce Clause.

3.  A Permanent Injunction enjoining all Defendants from continuing the 35 percent trucks-only toll increase.

4. An order directing IFA Defendants and ITRCC to render an accounting covering the period since January 9, 2017 of:  (1) all toll receipts received by ITRCC; (2) all expenditures by ITRCC for the operation and maintenance of the ITR; (3) all toll receipts transferred to IFA or INDOT pursuant to the Amended Lease and/or its predecessor agreement(s), and (4) the balance of all toll receipts retained by ITRCC, whether as profit, disbursements to investors in or owners of ITRCC, or otherwise.

5. A Judgment for damages against IFA and ITRCC, jointly and severally, in an amount equal to the amount of the excess tolls imposed on Plaintiffs and the members of the class they seek to represent together with pre-judgment and post-judgment interest as appropriate.

6. A Judgment for damages against Defendants Governor Eric Holcomb, Commissioner Joe McGuinness, Dan Huge, Micah G. Vincent, Kelly Mitchell, Owen B. Melton, Jr., Harry F. McNaught, Jr., and Rudy Yakym III, in an amount equal to the amount of the excess tolls imposed on Plaintiffs and the members of the class they seek to represent together with pre-judgment and post-judgment interest as appropriate.

7. An Award of attorneys' fees and the costs of this litigation including, where applicable, expert witness fees, all as provided for by 42 U.S.C. § 1988 and any other applicable provisions of law.

8. Such other relief as the Court deems proper.

Respectfully submitted,


/s/ *Michael R. Limrick*
Michael R. Limrick
Riley H. Floyd
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
mlimrick@hooverhullturner.com
rfloyd@hooverhullturner.com


Paul D. Cullen, Sr. ID No DC 100230*
Paul D. Cullen, Jr. ID No DC 463759*
Kathleen B. Havener ID No DC 432638*
Charles R. Stinson ID No DC 229557*
Katherine L. Quiniola ID No DC 1006958*
The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, DC 20007
(202) 944-8600
pdc@cullenlaw.com
pxc@cullenlaw.com
kbh@cullenlaw.com
crs@cullenlaw.com
klq@cullenlaw.com

Counsel for Plaintiffs
* Motion for Admission Pro Hac Vice to be filed