UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT ) <br> DRIVERS ASSOCIATIONS, INC., ) <br> CHUTKA TRUCKING LLC, ) <br> MARK ELROD ) <br>     d/b/a M R ELROD, ) <br> B. L. REEVER TRANSPORT, INC., ) <br> DAVID JUNGEBLUT, ) <br> WILLIE W KAMINSKI, ) <br> ) <br>             Plaintiffs, ) <br> ) <br>         v.                                ) <br> ) <br> ERIC HOLCOMB, ) <br> JOE MCGUINNESS, ) <br> THE INDIANA FINANCE AUTHORITY, ) <br> DAN HUGE, ) <br> MICAH G. VINCENT, ) <br> KELLY MITCHELL, ) <br> OWEN B. MELTON, JR., ) <br> HARRY F. MCNAUGHT, JR., ) <br> RUDY YAKYM, III, ) <br> ITR CONCESSION COMPANY LLC, ) <br> ) <br>             Defendants. ) | No. 1:19-cv-00086-RLY-MJD |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' *Joint Motion to Dismiss for Failure to State a Claim* [Dkt. 52].[1] On April 26, 2019, District Judge Richard L. Young designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. §

---

[1] Defendants have also filed a *Joint Motion for Oral Argument* [Dkt. 54], which the Court hereby **DENIES**. The record is sufficiently clear and oral argument is unnecessary to resolve the Motion to Dismiss.

636(b)(1)(B). [Dkt. 97.] For the reasons set forth below, the Magistrate Judge recommends that Defendants' Motion be **GRANTED**.

## I.     Background

The following facts are not necessarily objectively true. But as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. Cty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiffs bring this action to challenge the constitutionality of tolls imposed on commercial motor vehicles ("CMVs") traveling on the Indiana East West Toll Road ("Toll Road"). [Dkt. 1.] Plaintiffs in this case are the Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Chutka Trucking, LLC ("Chutka"), Mark Elrod d/b/a M R Elrod, B.L. Reever Transport, Inc., David Jungeblut, and Willie W. Kaminski (collectively "Plaintiffs").

The Toll Road spans approximately 157 miles between the Ohio Turnpike and the Chicago Skyway. [Dkt. 87 at 11.] The Indiana Finance Authority ("IFA"), a State entity, owns the Toll Road, and, in 2006, it leased the land and facilities to ITRCC for seventy-five years, ending in 2081. [*Id.* at 12.] ITRCC, in turn, agreed to pay rent in the amount of $3.8 billion, paid in full on the date of closing in 2006. [*Id.*]

Under the lease agreement, ITRCC has the authority to establish and collect tolls on the Toll Road that do not exceed maximum toll amounts set by IFA. [*Id.*] For purposes of the maximum tolls, IFA classifies vehicles based on the number of axles. [*Id.* at 13.] "[F]or example, a Class 3 vehicle has three axles." [*Id.*] Vehicles with more than two axles – Class 3

and above – are classified as "heavy vehicles." [*Id.*] These heavy vehicles are the subject of the case at hand.

On September 4, 2018, Defendant Governor Holcomb announced his infrastructure plan that called for a $1 billion expenditure for infrastructure projects known as the "Next Level Connections Program." [*Id.* at 15.] ITRCC agreed to fund the program with $1 billion and, in return, was authorized by IFA to increase toll rates for Class 3 and higher vehicles by 35 percent. [*Id.*] This authorization is reflected in the amended lease agreement. [*Id.*] The increase in tolls went into effect on October 5, 2018 and only affects heavy vehicles. [*Id.*]

Plaintiffs allege that Class 3 and higher vehicles are largely CMVs operating in interstate commerce. [*Id.*] According to Plaintiffs, 50 percent of heavy truck traffic in Indiana involves out-of-state trucks' driving straight through Indiana, and almost 90 percent of heavy truck traffic in Indiana crosses Indiana's borders. [*Id.* at 18.]

Plaintiffs further allege that "none of the intended expenditures of any portion of the $1 billion is intended to contribute to the maintenance, operation, or improvement of the Toll Road." [*Id.* at 17.] Moreover, "[t]he existing funding scheme for the Next Level Connections Program requires truckers engaged in interstate commerce to bear costs above and beyond the costs associated with their use of the Toll Road." [*Id.*]

Consequently, Plaintiffs plead two causes of action: first, that the increase in tolls violates the dormant Commerce Clause; and second, that it violates the Privileges and Immunities Clauses because the new tolls discriminate against interstate commerce. [Dkt. 87 at 24–26.]

On March 3, 2019, Defendants filed a *Joint Motion to Dismiss for Failure to State a Claim*. [Dkt. 52.] On April 19, 2019, Plaintiffs filed an unopposed *Motion for Leave to Amend Complaint to Add Plaintiffs/Prospective Class Representatives* [Dkt. 82], which the Court

granted [Dkt. 84]. Plaintiffs then filed an Amended Complaint on April 24, 2019 [Dkt. 87], which added David Jungeblut and Willie Kaminski "to serve as class representatives for the putative class to press their claims of discrimination under the Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution and the Privileges or Immunities Clause of the Fourteenth Amendment." [Dkt. 82 at 1.]

On May 30, 2019, Defendants filed a *Motion for Leave to File Notice of Supplemental Authority*, asking the Court for leave to include "the new State budget that Indiana recently enacted for fiscal year 2019" in support of their pending motion to dismiss this action. [Dkt. 103 at 1.] Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, a court may take judicial notice of matters of public record, orders, or other items appearing in the record of the case to decide a motion to dismiss. *See Doherty v. City of Chicago*, 75 F.3d 318, 325 n.4 (7th Cir. 1996). For this reason, the Court **GRANTS** Defendants' *Motion for Leave to File Notice of Supplemental Authority* [Dkt. 103].

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a claim by arguing that it fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the claim must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the non-moving party. *See Ashcroft*, 556 U.S. at 678; *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Moreover, the Court is not required to accept as true "a legal conclusion couched as a factual allegation." *Bonte v. U.S. Banke, Nat'l Ass'n*, 624 F.3d 461, 462 (7th Cir. 2010).

### III. Discussion

**A. Standing**

Defendants argue that Plaintiffs' claims under the dormant Commerce Clause and the Privileges and Immunities Clauses lack claims for which relief may be granted. But before the Court turns to these arguments, it must first address Defendants' assertion that Plaintiffs lack standing. While an objection to standing is typically asserted in a Rule 12(b)(1) motion to dismiss, the Court must nevertheless address the issue, as it concerns subject matter jurisdiction and cannot be waived, and it is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

In their brief in support of their 12(b)(6) motion to dismiss, Defendants state, "In any event, none of the Plaintiffs has standing to raise these [Privileges and Immunities] claims, since three of them are corporations and the fourth is a resident of Indiana." [Dkt. 53 at 13.] Defendants argue that corporations cannot be protected by the Privileges and Immunities Clause of Article IV. [*Id.* at 42.] Moreover, the only individual Plaintiff in the original Complaint, and

5

at the time Defendants' brief was filed, was Mark Elrod, an Indiana resident, who cannot assert a claim that Indiana is discriminating against out-of-state citizens. [*Id.* at 43.]

After Defendants' brief was filed, however, Plaintiffs filed their Amended Complaint, adding two individual Plaintiffs, Jungeblut and Kaminski. [Dkt. 87.] Plaintiffs stated that these additional parties "are individual truck drivers who (1) are not Indiana residents; (2) have traveled the Indiana Toll Road since October 5, 2018 when the Defendants imposed a 35% increase in tolls only on heavy vehicles on that road; and (3) have themselves been charged and have paid those increased tolls." [Dkt. 82 at 1.] Defendants responded to this by stating,

> For purposes of the pending Joint Motion to Dismiss, Defendants agree that Plaintiffs Jungeblut and Kaminski have alleged facts sufficient to demonstrate standing to raise individual claims by them under the Privileges and Immunities Clauses, including claims for damages. Defendants reserve the right to challenge Jungeblut's and Kaminski's standing to raise these claims at a later stage of the case. And Defendants continue to maintain that even at the motion to dismiss stage all of the other Plaintiffs lack standing to raise any claims under the Privileges and Immunities Clauses.

[Dkt. 85 at 2.]

"To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). Plaintiffs allege that the two new additions, Jungeblut and Kaminski, are commercial truck drivers who reside in Sibley, Missouri, and Angola, New York, respectively, and "travel on the [Toll Road] and . . . have personally paid the increased tolls for heavy vehicles that went into effect on October 5, 2018." [Dkt. 85 at 2.] The Court agrees with the parties and finds that Plaintiffs Jungeblut and Kaminski have standing to allege their Privileges and Immunities Clause claims.

The Supreme Court has stated that only one plaintiff must have standing with respect to each claim. *See, e.g.*, *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017)

(noting that when there are multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint"); *Horne*, 557 U.S. at 445 ("Here, as in all standing inquiries, the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'"). Plaintiffs Jungeblut and Kaminski have standing to assert their Privileges and Immunities claims; thus, the Court need not discuss the issue of standing with respect to the remaining plaintiffs.

### B. Dormant Commerce Clause

Defendants argue that Plaintiffs' dormant Commerce Clause claim fails because Indiana is acting as a market participant, rather than a regulator. [Dkt. 53 at 18.] Plaintiffs respond by asserting that the market participation "defense" does not apply and is not appropriate in deciding on a motion to dismiss. [Dkt. 67 at 16–17.]

The Commerce Clause grants Congress the authority to "regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. It also has an implied requirement, the "dormant Commerce Clause," that limits the power of the states to discriminate against interstate commerce. It prohibits "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). There is an exception, however: when a state acts as a market participant. "For Commerce Clause purposes, a basic distinction exists between states as market participants and states as market regulators." *Endsley v. City of Chicago*, No. 98 C 8094, 1999 WL 417918, at *7 (N.D. Ill. June 18, 1999) (citing *Reeves, Inc. v. Stake*, 447 U.S. 429, 436 (1980)). "[I]f a state is acting as a market participant, rather than a market regulator," the Commerce Clause does not limit its activities. *South-Central Timber Dev. v. Wunnicke*, 467 U.S. 82, 93 (1984).

7

"A government acts as a market participant when it operates in a proprietary capacity as a party to the transaction, charging others for the uses of its services, facilities, or products." *Endsley*, 1999 WL 417918, at *7 (citing *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 912 (8th Cir. 1997); *J.F. Shea Co., Inc. v. Chicago*, 992 F.2d 745, 749 (7th Cir. 1993) ("when acting as a proprietor, a government shares the same freedom from the Commerce Clause that private parties enjoy")). On the other hand, a government is a market regulator if it imposes conditions "that have substantial regulatory effect outside of that particular market." *South-Central Timber*, 467 U.S. at 97; *see also J.F. Shea*, 992 F.2d at 748. The Supreme Court has stated that courts "'should be particularly hesitant to interfere . . . under the guise of the Commerce Clause' where a local government engages in a traditional government function." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 341 (2008).

"Applying the market participation doctrine is a difficult task because the distinction between permissible participation and impermissible regulation and/or taxation is often confounding to both courts and scholars alike." *Waste Connections of Kan., Inc. v. City of Bel Aire, Kan.*, 191 F. Supp. 2d 1238, 1245 (D. Kan. 2002) (citing *Reeves*, 447 U.S. at 438-39 (recognizing the State, when merely participating in the economy, should share the same freedoms of from federal constraints as those enjoyed by private traders or manufacturers who are engaged in wholly private business)).

The Court finds that Indiana is acting as a market participant in this instance. IFA, as owner and lessor of the Toll Road, is acting as a property owner in leasing the land to ITRCC. ITRCC, with the authorization of IFA, charges drivers a fee in exchange for a service – access to the Toll Road.

The parties heavily discuss, and Defendants significantly rely on, a similar case before the Seventh Circuit, *Endsley v. City of Chicago*, in which the Seventh Circuit found Chicago to be operating as a market participant, rather than a market regulator. 230 F.3d 276 (7th Cir. 2000). In that case, motorists that used the Chicago Skyway toll bridge brought a class action against Chicago, arguing that the city's use of revenues from the tolls to pay for other transportation improvements in the city violated, among others, the dormant Commerce Clause. *Id.* at 278. The plaintiffs "plead[ed] themselves out of court" by including in their complaint the notion that Chicago "operated the Skyway as a proprietary enterprise, and not in its governmental capacity," essentially arguing the defendant's case for itself. *Id.* at 284.

The Seventh Circuit, however, continued with its market participant analysis by stating, "Even if plaintiffs had not plead themselves out of court, the facts suggest that the City was indeed a market participant." *Id.*[2] The Seventh Circuit noted that "[c]ourts have recognized the operation of private toll roads as legitimate economic activity." *Id.* at 284-85 (citing *Overstreet v. North Shore Corp.*, 318 U.S. 125, 127 (1943); *Lane Constr. Corp. v. Highlands Ins. Co., et al.*, 207 F.3d 717, 720 (4th Cir. 2000)). "As owner and operator of the property, the City offers drivers access to the Skyway in exchange for a fee. At times, when the Skyway was not raising sufficient revenue, the City would fund debt service and maintenance costs. These facts suggest that the City was acting as a property owner, using its property to raise money, not as a regulator." *Id.* at 285.

---

[2] Plaintiffs argue that *Endsley* is easily distinguishable because the Seventh Circuit's discussion of the market participation doctrine is merely dicta, and that Plaintiffs in this case did not plead themselves out of court. [Dkt. 67 at 19.] The Court disagrees, and it finds that the Seventh Circuit's analysis was part of the court's holding, as it "was based on the actual facts before the court and was a sufficient ground standing alone to reach the court's decision." *Whetsel v. Network Prop. Servs., LLC*, 246 F.3d 897, 903 (7th Cir. 2001).

The case at hand is very similar to *Endsley*. The main difference is that here, the State is not directly charging motorists via the tolls; ITRCC, a private company, is. Instead, the State is leasing the Toll Road to ITRCC, who "offers drivers access to the [Toll Road] in exchange for a fee." *Id.* at 285. Thus Defendants are acting even more like property owners, using their property to raise money, than the city was in *Endsley*. The State is leasing its property, the Toll road, "just as would a private business." *Id.* Moreover, ITRCC is acting just as the City acted in *Endsley*: it is "using its property to raise money." *Id.*

Plaintiffs argue that Defendants cannot assert the market participant doctrine because they are not the State of Indiana, or they have yet to establish that they are the State: "As a threshold matter, Defendants have made no effort to demonstrate how they are even entitled to raise such a defense. The State of Indiana is not a party to this action. The individual Defendants neither separately nor as a group constitute the State of Indiana." [Dkt. 67 at 24.] The Court notes, however, that while the market participant doctrine applies to governmental conduct, so too does the dormant Commerce Clause. Thus Defendants are correct: "Either Defendants are non-state actors and thus cannot violate the Commerce Clause, or they are in the same position as the City in *Endsley* – state actors running a toll road as market participants." [Dkt. 81 at 16 (citing 230 F.3d at 284-86).]

"When a governmental entity offers access to its property in exchange for a fee and generally carries itself as a business would in a similar setting, it is acting as a property owner and not as a regulator." *Hlinak v. Chi. Transit Auth.*, No. 13 C 9314, 2015 WL 361626, at *3 (N.D. Ill. Jan. 28, 2015) (citing *Endsley*, 230 F.3d at 285). Because Defendants are acting as a market participant, the tolls are not subject to dormant Commerce Clause scrutiny. Consequently, the Court finds that Plaintiffs' dormant Commerce Clause claim fails as a matter

10

of law.  The Magistrate Judge recommends that Defendants' motion to dismiss Plaintiffs' dormant Commerce Clause claim be **GRANTED** and Plaintiffs' dormant Commerce Clause claim be **DISMISSED WITH PREJUDICE**.

    **C.  Privileges and Immunities Clauses**

Defendants next argue that the new tolls do not violate the Privileges and Immunities Clauses.  [Dkt. 53 at 41.]  The Privileges and Immunities Clause of Article IV provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV, § 2, cl. 1.  The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  *Id.* amend. XIV, § 1, cl. 2.

The "two clauses share a common jurisprudence."  *E & E Constr. Co. v. Illinois*, 674 F. Supp. 269, 273-74 (N.D. Ill. 1987).  The Privileges and Immunities Clause of Article IV "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."  *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).  "The Supreme Court has established a two-step inquiry for assessing claims under the Privileges and Immunities Clause: First, the court must determine whether the alleged discrimination bears upon a 'fundamental' right – that is, one of 'those "privileges" and "immunities" bearing upon the vitality of the Nation as a single entity.'"  *Cohen v. R.I. Turnpike & Bridge Auth.*, 775 F. Supp. 2d 439, 451 (D.R.I. 2011) (quoting *United Bldg. & Constr. Trades Council v. Mayor of Camden*, 465 U.S. 208, 218 (1984)).  "If no fundamental right is implicated, the Privileges and Immunities Clause does not require equal treatment of residents and nonresidents, and the challenged state action does not 'fall within the purview of the Privileges and Immunities Clause.'"  *Id.* (quoting *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978)).

In their Amended Complaint, for their second cause of action, Plaintiffs state,

> 146. The Commerce Clause and the Privileges and Immunities Clauses of the United States Constitution prohibit state actions that discriminate against interstate commerce.
>
> 147. The substantial increase in tolls imposed by Defendants upon only Class 3 and higher commercial motor vehicles effective on October 5, 2018 discriminates against interstate commerce.
>
> 148. The toll increase falls exclusively on the types of trucks that are most likely to be engaged in the interstate transport of cargo. No increase in tolls on other vehicles including automobiles, buses and small trucks that are relatively less likely to be engaged in interstate commerce was imposed.

[Dkt. 87 at 26.]

Plaintiffs have failed to successfully plead their claims under the Privileges and Immunities Clauses. First, Plaintiffs have failed to establish any discrimination present under the existing toll structure. As Defendants argue, "[a] truck traveling from Ohio to Illinois pays the same distance-based toll within Indiana as a truck traveling from Gary to South Bend, without any premium for crossing a State border." [Dkt. 53 at 38.] The increase in tolls does not pertain to whether the vehicle is from out-of-state, but simply the distance that vehicle travels on the Toll Road. Second, Plaintiffs' claim fails because they have not pointed to any fundamental right that is implicated in this alleged discrimination.

For Plaintiffs' claims pursuant to the Privileges and Immunities Clauses, Plaintiffs focus on interstate commerce, but this is only relevant to the dormant Commerce Clause claim. The Privileges and Immunities Clause focuses on discriminatory treatment to out-of-state residents, "not regulation affecting interstate commerce." *United Bldg. & Constr.*, 465 U.S. at 220. And when discussing discrimination, Plaintiffs' brief focuses entirely on the dormant Commerce Clause, but fails to discuss this concerning the Privileges and Immunities Clauses. [*See* Dkt. 67 at 40–41, 44–45.] Plaintiffs do not respond to Defendants' arguments concerning the lack of

12

necessary detail in these claims and the lack of discrimination, nor do they point to any fundamental right.  Plaintiffs simply assert that "'[t]here is little, if any, case law in the privileges-and-immunities context addressing th[e] question [of protectionist purposes]' which is critical . . . .  Plaintiffs have sufficiently alleged here that their rights have been violated. Moreover, because claims under the Privileges and Immunities Clause are fact-based, Defendants' motion to dismiss must be denied."  [Dkt. 67 at 45 (citations omitted).]  "It is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), and "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016).

The Court finds that the allegations in Plaintiffs' complaint fail to support a reasonable inference that Defendants' actions violate the Privileges and Immunities Clauses.  Accordingly, the Magistrate Judge recommends that the Court **GRANT** Defendants' Motion.  Because a 12(b)(6) motion to dismiss is a test on the sufficiency of the pleadings and not on the merits, parties are ordinarily given an opportunity to attempt to correct deficiencies in the complaint. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). However, Plaintiffs have not asked for an opportunity to replead, and "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted," *id.*  Therefore, the Magistrate Judge recommends that Plaintiffs' claims under the Privileges and Immunities Clauses be **DISMISSED WITH PREJUDICE**.

### IV.   Conclusion

The Court has carefully reviewed Plaintiffs' Amended Complaint and has concluded that it fails as a matter of law to sufficiently plead claims pursuant to the dormant Commerce Clause

and Privileges and Immunities Clauses.  Consequently, the Magistrate Judge recommends that

Defendants' *Joint Motion to Dismiss for Failure to State a Claim* [Dkt. 52] be **GRANTED** and

that this matter be **DISMISSED WITH PREJUDICE**.

Dated:  12 AUG 2019

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.